# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAIME BALTAZAR, | ) |
|                          Plaintiff, | ) |
| v. | ) |
| TETON TRANSPORTATION, INC. and CHARLES M. WENDER, JR., | ) |
|                          Defendants, | ) Case No. 09 C 4739 |
| | ) Honorable Joan B. Gottschall |
| TETON TRANSPORTATION, INC. and CHARLES M. WENDER, JR., | ) |
|                          Third Party Plaintiffs, | ) |
| v. | ) |
| GERALD JACKSON and FORD HEIGHTS POLICE DEPARTMENT, | ) |
|                          Third Party Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jaime Baltazar brought suit in state court against defendants Teton Transportation, Inc. ("Teton") and Charles M. Wender Jr., a Teton employee, (collectively, the "defendants") for alleged negligence in Wender's operation of a Teton tractor-trailer (also known as a "semi" or a "big rig"). The defendants removed the action to federal court based on diversity jurisdiction. Thereafter, the defendants filed a third party complaint against third party defendants Gerald Jackson, a former Ford Heights Police Officer, and the Ford Heights Police Department (together, the "third party defendants") for contribution and property damage. Both the defendants and the third

party defendants have filed motions for summary judgment. For the reasons set forth below, the court grants both motions.

## I. BACKGROUND

Baltazar's suit arises from a June 29, 2007 car accident. That morning, Baltazar, who works as a mechanic at Big Top Auto Parts ("Big Top") in Ford Heights, Illinois, was test-driving vehicles. As part of his job, he conducted these test drives about three to four times a week along a regular route on which he would travel westbound, back to Big Top, on U.S. Highway 30 ("Highway 30") between Illinois State Route 394 ("Route 394") and Cottage Grove Avenue. Meanwhile, Wender was driving a Teton tractor-trailer westbound on Highway 30; he was pulled over by Officer Gerald Jackson near the intersection of Highway 30 and Greenwood Avenue, between Cottage Grove Avenue and Route 394. The speed limit at that location was 35 miles-per-hour ("m.p.h.").

Jackson was conducting an overweight truck enforcement operation and was pulling over tractor-trailer drivers he suspected of not having stopped at a weigh station along Highway 30. With two westbound lanes but no shoulder along that stretch of the highway, Jackson directed Wender to pull over into the rightmost westbound lane behind several other tractor-trailers that Jackson had also pulled over. In conducting his enforcement operation, Jackson instructed the pulled-over drivers to turn on their four-way flashers; he did not ask them to place warning devices onto the road, such as flares or cones, because he anticipated the tractor-trailers would be stopped for less than ten minutes. The parties dispute both whether Wender asked Jackson if Wender should deploy additional safety devices; they also dispute whether Jackson asked Wender to wait

2

on the sidewalk or to wait in his cab.[1] Wender complied with the flasher instruction, turning the flashers on and visually inspecting them before returning to the driver's seat of his tractor-trailer.[2] Wender was in the driver's seat of his tractor-trailer and was waiting as Jackson spoke with the driver of the tractor-trailer immediately ahead of Wender's when the accident occurred.

At about 10:28 a.m., as other vehicles went safely around the parked tractor-trailers, Baltazar collided with Wender's tractor-trailer from behind. Baltazar was heading westbound on Highway 30 in the rightmost lane and approached the traffic stop location while about eighteen feet, or one car-length, behind a sport utility vehicle ("SUV"). As Baltazar and the SUV approached the traffic stop location, the SUV turned sharply into the open left-hand lane without colliding with Wender's tractor-trailer. Baltazar does not dispute that he could see Wender's tractor-trailer over the top of the SUV for approximately three seconds before the SUV turned out of the rightmost lane, although he believed Wender's tractor-trailer was moving when he first saw it.[3] Baltazar admits both that he was traveling at a speed that prevented his stopping in time to avoid the collision once the SUV switched lanes and that he lost control of his vehicle when he tried to stop.

---

[1] Wender testified that he asked Jackson whether he should put markers on the road, and Jackson said no (Wender Dep. 29:8-29:9, 50:25-51:4, Aug. 17, 2010, ECF No. 53-2 (hereinafter "Wender Dep.")), while Jackson testified that none of the truck drivers asked him about putting out markers. (Jackson Dep. 57:10-57:18, Dec. 29, 2009, ECF No. 53-9 (hereinafter "Jackson Dep.").)

[2] Jackson corroborates Wender's account by confirming that he saw Wender's flashers illuminated. (Def.'s Statement of Uncontested Facts ¶¶ 24-27, ECF No. 52.) While Baltazar contests that Wender complied with the officer's instructions and turned on the flashers, Baltazar fails to point to admissible evidence in the record to contradict Wender's and Jackson's account as required by the Local Rules and this court's standing orders. (*See* Resp. to Defs.' Statement of Uncontested Facts ¶¶ 24, 26-27, ECF No. 55-3.) While Baltazar cites to page 10, line 13 of his deposition in support, this portion of the deposition does not create a factual dispute; instead, it merely recounts the route Baltazar would normally take on his test drives for Big Top. (Baltazar Dep. 9:11-11:24, Aug. 9, 2010, ECF No. 53-4 (hereinafter "Baltazar Dep.").)

On the morning of the accident, the weather was good: the sun was out, and the pavement was dry. Baltazar, in fact, testified that the sun's brightness made it impossible for him to tell whether Wender's flashers were on, although the sun was not in Baltazar's eyes.

## II. LEGAL STANDARD

Upon motion, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate where, after adequate time for discovery, a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case [ ] on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 520 (7th Cir. 2011) (citing *Celotex*). In such cases, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

To survive a Rule 56 motion, the nonmoving party must either: (a) show that the movant cannot produce admissible evidence that a fact is not disputed, (b) show that the materials cited by the movant do not establish the absence or presence of a genuinely disputed material fact, or (c) direct the court's attention to specific admissible evidence in "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that show that there is some

4

genuinely disputed material fact. Fed. R. Civ. P. 56(c)(1); *see United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510-11 (7th Cir. 2010) ("[S]ummary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact."). "The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive a summary judgment motion; there must be evidence on which the jury could reasonably find in favor of the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

On summary judgment, "the court views the record in the light most favorable to the non[]moving party, and draws all reasonable inferences in that party's favor." *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255, and *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 (7th Cir. 2009)). In addition, "district courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, both of which are the province of the jury." *Omnicare, Inc. v. United Health Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (internal quotations and citations omitted); *see Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("As we have said many times, summary judgment cannot be used to resolve swearing contests between litigants.").

### III. ANALYSIS

**A.  The Defendants' Motion for Summary Judgment**

Illinois tort law governs this diversity action. *See Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). To recover damages on a negligence claim in Illinois, "a plaintiff must prove that the

defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injur[ies]." *Krywin v. Chicago Transit Auth.*, 938 N.E.2d 440, 446 (Ill. 2010) (citing *First Springfield Bank & Trust v. Galman*, 720 N.E.2d 1068, 1071 (Ill. 1999)). "Whether a duty exists is a question of law for a court to decide," *Krywin*, 938 N.E.2d at 447 (citing *Rhodes v. Illinois Cent. Gulf R.R.*, 665 N.E.2d 1260, 1267 (Ill. 1996)), while "[f]oreseeability questions are generally left to the jury" (although proximate cause becomes a question of law when the facts are undisputed.) *Benner v. Bell*, 602 N.E.2d 896, 899-900 (Ill. App. Ct. 1992).

The defendants argue that they are entitled to summary judgment because (1) Baltazar has failed to establish that the defendants owed a duty to him, and (2) Baltazar has failed to establish a genuine issue of material fact as to whether Wender's conduct was the proximate cause of Baltazar's injuries. Because the court agrees that neither Teton nor Wender owed Baltazar any duty in the first instance, summary judgment is granted in the defendants' favor.

The Illinois Vehicle Code, 625 Ill. Comp. Stat. 5/11-203, provides: "No person shall willfully fail or refuse to comply with any lawful order or direction of any police officer, fireman, or school crossing guard invested by law with authority to direct, control or regulate traffic." A person who refuses to comply with a lawful order has committed a petty offense and must pay a mandatory fine. *Id.* Here, there is no factual dispute that Wender was required to pull his tractor-trailer over in compliance with Jackson's directive.[4] In conformity with Jackson's instructions, Wender pulled to the side of the

---

[4] While Baltazar disputes "the characterization that Charles Wender did as he was directed" (*see* Resp. to Defs.' Statement of Uncontested Facts ¶ 24), once again Baltazar cites no admissible evidence to establish a factual dispute. Accordingly, the court disregards his response. Officer Jackson testified that he

road, turned on his four-way flashers, and visually inspected those flashers before returning to the driver's seat of his tractor-trailer.[5] While Baltazar suggests that Wender should have set out flares or other safety devices, there is no evidence of record to indicate that the presence of such devices would have made any difference. Instead, the court is provided with Baltazar's unsupported speculation that safety devices would have helped, despite lacking any evidence as to where the devices would have been located or how Baltazar could have seen the devices in time to avoid a collision.[6]

In any event, while there is some dispute as to whether Wender asked Jackson if flares should be set out, there is no dispute that Jackson never instructed Wender to display any flares. Baltazar argues that Wender violated Illinois law by failing "to properly display warning devices while his vehicle was disabled upon the roadway," citing 625 Ill. Comp. Stat. 5/12-702(g) ("Whenever any vehicle . . . is disabled upon any roadway or shoulder of a divided highway during the time that lighted lamps are not required, the driver of such vehicle shall display 2 red-cloth flags or 2 portable emergency reflectors . . . ."). In Illinois, "[t]he violation of a safety statute is *prima facie*

---

ordered Wender to pull over. (Jackson Dep. 31:9-32:3.) Wender's testimony is consistent. (Wender Dep. 28:1-29:9.)

[5] Baltazar attempts to create a dispute by stating that he "did not see any warning lights on the Wender vehicle as being illuminated prior to impact." (*See* Resp. to Defs.' Statement of Uncontested Facts ¶ 24.) Not only does the cited portion of his deposition testimony say nothing about Wender's flashers, even if the court were to accept this statement as true, it does not undermine Wender's sworn testimony that the flashers were illuminated.

[6] Baltazar testified as follows: "Q: Now, do you know whether or not if such reflectors or flares or triangles had been placed, whether or not anything would have been different on June 29, 2007? A: Yes. Q: What would have been different? A: It would have been better caution, it would have been more. Q: How do you know that the SUV driver would have even heeded those or abided by or followed those flares or signals or triangles? A: I would have tried to avoid the accident. Q: But what would the SUV driver have done, do you know? A: No. Q: Okay. So is it fair to say it would be just a guess on your part if such warning devices would have made any difference in this case? A: Yes, perhaps." (Baltazar Dep. 75:24-76:21.)

evidence of a breach of a duty of due care where the injured party is within the class of persons that the statute is intended to protect." *Smith v. Armor Plus Co., Inc.*, 617 N.E.2d 1346, 1352 (Ill. App. Ct. 1993). But here, Baltazar runs up against a well-established point of Illinois law: the fact that a vehicle is stopped on the side of the road does not render it "disabled" within the meaning of the statute. *See, e.g.*, *Salinas v. Werton*, 161 Ill.App.3d 510, 517 (1987) (holding that a tow truck operator had no duty to display flares or emergency reflectors simply because the tow truck was stopped on the side of the road; the tow truck was not "disabled" for purposes of the statute); *Nunley v. Mares*, 449 N.E.2d 864, 869 (Ill. App. Ct. 1983) (same). A driver of a non-disabled vehicle has no duty to display flares or other warning devices. *See Henderson v. Beckman Texaco*, 573 N.E.2d 369, 373-74 (Ill. App. Ct. 1991). Since Wender's vehicle was not disabled under Illinois law, he owed no duty to Baltazar to set out additional warning devices, nor did he violate 625 Ill. Comp. Stat. 5/12-702(g).[7]

In sum, while it is possible to imagine a scenario in which someone obeys a police officer's orders so carelessly that liability results, there is no evidence of such carelessness here. The record establishes that the accident resulted from Wender doing precisely what Jackson instructed him to do. Wender complied with his obligation to follow Jackson's lawful orders, *see* 625 Ill. Comp. Stat. 5/11-203, and Illinois law created no duty for Wender to display additional safety warning devices, *see* 625 Ill. Comp. Stat. 5/12-702(g). While it is theoretically possible that (despite Wender's lack of duty) Wender's failure to display warning devices contributed to the accident, Baltazar cannot

---

[7] In a portion of Wender's deposition testimony not cited in the parties' summary judgment motions, he testified that he carried orange markers that, pursuant to Department of Transportation regulations, he would have had to place on the roadway if his vehicle were to become disabled for more than ten minutes. In addition to the fact that his vehicle was not disabled, it appears to be undisputed that Officer Jackson did not intend the traffic stop to last more than ten minutes.

make his case on this record: he offers nothing in support but his own equivocal, unsupported testimony, and there is no basis for submitting this theory of negligence to the jury.[8] Because there is no basis for finding Teton or Wender liable, the defendants' motion for summary judgment is granted.

**B.      The Third Party Defendants' Motion for Summary Judgment**

Since Counts 1-4 of the third party complaint are premised upon the defendants' liability, and since the court has determined that the defendants are entitled to summary judgment, the third party defendants are entitled to summary judgment on these counts as well. However, Counts 5 and 6 are based not upon the defendants' liability, but instead allege that the third party defendants are liable to them for property damage as a result of their negligent conduct (Count 5) or their willful and wanton conduct (Count 6). The third party defendants argue that they are entitled to summary judgment because the Illinois Tort Immunity Act (the "ITIA") makes them immune from liability on both counts.

**1.      Count 5 of the Third Party Complaint**

As to Count 5, the court grants the third party defendants' motion for summary judgment because there is no genuine issue of material fact over whether Officer Jackson's conduct falls within the scope of the ITIA. The ITIA provides that "a public

---

[8]     Moreover, "[e]ven if there were some basis for finding that defendants . . . had breached some duty to plaintiff by failing to operate warning lights or display flares," summary judgment might nonetheless be appropriate. *Henderson*, 573 N.E.2d at 373-74. Negligence requires proximate cause, and "[l]iability cannot be predicated upon surmise or conjecture as to the cause of the injury." *Id.* In *Henderson*, there was "nothing in the record to support any inference that defendants' alleged failure to turn on flashers or warning lights or to place flares or other warning devices contributed in any way to the collision." *Id.* The Illinois appellate court affirmed the grant of summary judgment in favor of the defendants. *See id.*; *see also Benner*, 602 N.E.2d at 899-900 (citing numerous cases in which summary judgment based the courts' finding that there was no proximate cause as a matter of law). Here, of course, the court has been provided only Baltazar's "guess" that the additional safety devices would have helped.

9

employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 Ill. Comp. Stat. 10/2-202. The ITIA also specifies that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." *Id.* at 10/2-109. Since the defendants allege no willful and wanton conduct in Count 5 (the defendants themselves call the conduct "negligent"), the third party defendants are immune from liability under the ITIA so long as the conduct in question was carried out in the "execution or enforcement of any law."[9] This is "a factual determination which must be made in light of the circumstances involved in each case," but "where the evidence is undisputed or susceptible to only one possible interpretation, the question may be decided as a matter of law." *Hudson v. City of Chi.*, 881 N.E.2d 430, 443 (Ill. App. Ct. 2007) (citations omitted). Such is the case here.

Over time, Illinios courts have developed a flexible framework to analyze claims of immunity under the ITIA. The words "in the execution or enforcement of any law" are given their plain and commonly ascribed meaning. *Arnolt v. City of Highland Park*,

---

[9] The defendants allege in Count 5 that the third party defendants are liable for the following negligent acts or omissions:
  a. directing WENDER to stop his vehicle in an active lane of traffic;
  b. failing to safely detain WENDER's vehicle;
  c. failing to park his police car in the vicinity of the area in which he stopped the tractor trailers;
  d. failing to use any emergency lights to alert other motorists of the vehicles he stopped or provide any other type of visual or audible warning signals as a caution to oncoming traffic;
  e. failing to keep a proper lookout for other vehicles approaching along the roadway;
  f. failing to place warning devices on the roadway to alert other motorists of the vehicles he had pulled over;
  g. failing to direct WENDER to place flares or triangles out behind his vehicle after JACKSON detained WENDER;
  h. failing to instruct or train its employees, officers, or agents how to properly stop or detain a motorist;
  i. failing to create a policy as to how to pull over vehicles; and
  j. was otherwise careless and negligent.
(Third Party Compl. Count 5 ¶ 9, ECF No. 18.)

282 N.E.2d 144, 147 (Ill. 1972) (citing *Droste v. Kerner*, 217 N.E.2d 73, 78 (Ill. 1966)). This means that the ITIA extends immunity to a public employee who negligently acts "while in the *actual* execution or enforcement of a law"; immunity does not extend to "every act or omission done while on duty." *Id.* (emphasis added). For instance, a police officer "merely cruising" in his car may not be immune under the ITIA if the facts establish that he was not actively enforcing a law at the time of his negligent act. *Id.* at 148; *see Leaks v. City of Chi.*, 606 N.E.2d 156 (Ill. App. Ct. 1992) (holding that a police officer's conclusory testimony that he suspected a violation of the law was taking place at the time he backed his vehicle into the plaintiff's car was insufficient to establish ITIA immunity). On the other hand, the law is clear that the party raising ITIA immunity as an affirmative defense need not prove an actual violation of the law. *See Leaks*, 606 N.E.2d at 159 ("Our holding, we stress, is not intended to establish a rule that facts establishing that an actual crime or violation of law was taking place must be shown to prevail upon the affirmative defense, or that investigatory procedure may never bring police personnel within the ambit of section 2-202.").

Here, the third party defendants argue that that Jackson was enforcing a traffic law when he ordered Wender to pull over to the side of the road, bringing his actions under the protection of the ITIA. The court agrees. No reasonable jury could conclude to the contrary. It is undisputed that Jackson pulled Wender over because Jackson believed that Wender had violated the law. Along with other officers, Jackson was part of an enforcement action designed to apprehend truckers whom he believed had failed to comply with weigh station signs. *See* 625 Ill. Comp. Stat. 5/15-112(c) (requiring "second division vehicles" such as Wender's to comply with weigh station signs). Jackson's

11

undisputed deposition testimony establishes that on the morning of the accident, he confirmed that the weigh station was open, and he informed the station's operator of his plan to pull over tractor-trailers as they exited Route 394 and away from the open weigh station. When Jackson pulled Wender over, there were already two tractor-trailers pulled over and waiting in line. Jackson told the drivers why they had been stopped, showed them the short distance to a parking lot near the police station where he would give them a ticket, and told them that they had the option of surrendering their licenses or posting a cash bond. Jackson testified that it was his intent to issue a citation to each driver he pulled over, and indeed, Wender's deposition testimony confirms this—Jackson was unmoved by Wender's protestations of innocence and made it clear that he still intended to give Wender a ticket.

In Illinois, a police officer engaged in traffic law enforcement is entitled to the protection of ITIA. *See Fitzpatrick v. City of Chi.*, 492 N.E.2d 1292, 1297 (Ill. 1986); *Wade v. City of Chi.*, 847 N.E.2d 631, 638 (Ill. App. Ct. 2006) ("A police officer is 'executing' or 'enforcing' a law, within the meaning of section 2-202, when he is engaged in an investigation in order to enforce traffic laws."). Because Jackson was engaged in the enforcement of a law, the third party defendants are immune from liability under the ITIA for Jackson's allegedly negligent acts.

The court briefly notes that the third party plaintiffs invoke the "special duty" rule as an alternate basis for liability. They argue that Jackson owed a special duty to Wender, which would allow a showing of simple negligence to suffice. But as third party defendants note, the Illinois Supreme Court has ruled that the judicial application of the "special duty" exception to override the legislatively created governmental immunity of

the ITIA violates the sovereign immunity provision and separation of powers clause of the Illinois Constitution. *Zimmerman for Zimmerman v. Village of Skokie*, 697 N.E.2d 699, 710 (Ill. 1998). The third party plaintiffs' invocation of the "special duty" rule to abrogate the limitations of the ITIA is therefore rejected, and the third party defendants' motion for summary judgment is granted as to Count 5.

### 2. Count 6 of the Third Party Complaint

In Count 6, the third party plaintiffs allege that Jackson's acts were willful and wanton. The ITIA does not extend immunity to such acts. To qualify as "willful and wanton," Jackson must have undertaken "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 Ill. Comp. Stat. 10/1-210. As the Seventh Circuit has explained, "[w]illful and wanton conduct consists of more than mere inadvertence, incompetence, or unskillfulness." *Carter v. Chi. Police Officers*, 165 F.3d 1071, 1080 (7th Cir. 1998) (citing *Moran v. City of Chi.*, 676 N.E.2d 1316, 1323 (Ill. App. Ct. 1997)). Rather, "[a] person engages in willful and wanton conduct when he ignores known or plainly observable dangerous conditions and does something that will naturally and probably result in injury to another." *Id.* at 1080-81 (citing *Medina v. City of Chi.*, 606 N.E.2d 490, 496 (Ill. App. Ct. 1992)). "Whether conduct is willful and wanton is ultimately a question of fact," but "a court may hold as a matter of law that a public employee's actions do not amount to willful and wanton conduct where no other contrary conclusion may be drawn from the record presented." *Williams v. City of Evanston*, 883 N.E.2d 85, 91 (Ill. App. Ct. 2007). Here, the court

grants the third party defendants' motion for summary judgment because no reasonable factfinder could conclude that Jackson's conduct was willful and wanton.

The undisputed facts establish that the speed limit on westbound Route 30 was a relatively sedate 35 m.p.h. In the days prior to the accident, Jackson routinely pulled tractor-trailers over in this area at the rate of about five to seven vehicles per day. On the day in question, Jackson directed Wender to park his tractor-trailer behind two other stopped tractor-trailers in the rightmost lane on Route 30 heading westbound. Jackson intended to cite Wender and the other pulled-over drivers for failing to stop at a weigh station. Accepting the non-movant's version of the disputed facts at this stage, Jackson told Wender to remain in his cab and not to put out markers. Jackson did, however, tell Wender to put on his flashers. Wender did so, and he physically confirmed that the flashers were working. Wender's tractor-trailer was not disabled, and there is no evidence to indicate that Wender's truck was stopped for a period of time long enough to trigger an obligation to display warning indicators other than the flashers.

The third party plaintiffs emphasize that Wender disputes whether the weigh station was open at the time he was pulled over. In an apparent attempt to undermine the characterization of the traffic stops as part of an enforcement operation, they also offer additional undisputed facts that show Jackson was stopping trucks to generate funds for the Village of Ford Heights. But other than this immaterial dispute surrounding Wender's guilt or innocence, the facts they cite in support of their claim (*i.e.*, Wender's deposition testimony) are entirely consistent with the unopposed facts described above. The thrust of their argument is that Jackson acted willfully and wantonly in ordering Wender to stop his vehicle "in an active lane of traffic" and to stay in the vehicle. They

14

argue that Jackson could have stopped Wender's vehicle in a safer location, directed Wender to turn down a side street, or ordered him to illuminate his emergency lights or place additional warning devices on the roadway.

The court rejects these arguments for a number of reasons. First, the third party plaintiffs have made no attempt to tie Baltazar's injuries or the tractor-trailer's damage to the fact that Wender remained in his cab. Nor has there been any showing that either under Illinois law or Department of Transportation regulations, Wender was required to display safety devices other than the flashers, which he did activate. Finally, there is no evidence that this routine enforcement action had ever caused any damage or injury prior to the date in question. While the issue of whether conduct was willful and wanton is normally one for the jury, third party plaintiffs are not entitled to submit this claim to a jury with the evidence they have produced here. In short, with no evidence of adverse road conditions, traffic volume, topography, or visibility; and no indication that additional safety devices would have been visible to Baltazar, or that such devices could have materially affected his behavior; it is impossible to see what basis a jury would have for finding Jackson's conduct willful and wanton. There is no cause to conclude that an unreasonable risk was posed by the tractor-trailer being pulled over for a relatively short period of time, or that taking any of the precautions suggested by the third party plaintiffs was warranted or would have made a difference. Without any facts to suggest that Jackson consciously disregarded the safety of others, or ignored a "known or plainly observable dangerous condition," *see Carter*, 165 F.3d at 1080-81, the jury could only make a finding that he acted in a willful and wanton fashion by engaging in unsupported speculation. The third party plaintiffs are not entitled to present such a theory to a jury.

## IV. CONCLUSION

For the reasons stated above, the court grants both the defendants' motion for summary judgment and the third party defendants' motion for summary judgment. The case is dismissed.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 30, 2011